[Nos. H010706, H011117. Sixth Dist. Aug. 1, 1994.]

OTIS ELEVATOR COMPANY, Cross-complainant, Cross-defendant, and Appellant, v.
TODA CONSTRUCTION OF CALIFORNIA, Cross-defendant, Cross-complainant, and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 1, 2, and 4.

**COUNSEL**

Jay R. Mayhall, Jacobs Associates and Marvin A. Jacobs for Cross-complainant, Cross-defendant, and Appellant.

Jones, LaMore, Brazier & Riddle and Eugene P. Lamore for Cross-defendant, Cross-complainant, and Respondent.

## OPINION

**MIHARA, J.**—After a court trial, appellant Otis Elevator Company (Otis) was ordered to indemnify respondent Toda Construction of California (Toda) for Toda's payment of damages to a plaintiff who was injured in an elevator installed by Otis. On appeal (H010706), Otis contends that a contract requiring Otis to indemnify Toda was superseded by a later temporary agreement shifting the responsibility for all accidents to Toda. In a consolidated appeal (H011117), Otis challenges the trial court's award to Toda of attorney fees incurred in prosecuting the indemnity action. We will affirm the judgment but remand for redetermination of attorney fees.

## BACKGROUND

In late 1986 Toda contracted with West Santa Clara Group to construct an office building in downtown San Jose. In December of that year Toda entered into a subcontract with Otis for the installation of five elevators in the building. An indemnity provision in the subcontract stated that Otis would indemnify Toda for all settlements and awards arising from work performed under the subcontract.[1]

On April 26, 1988, Otis turned over elevator No. 5, a freight and passenger elevator, to Toda for Toda's use during construction of the upper floors of the building. The parties executed a document drafted by Otis, entitled "Temporary Acceptance," which imposed on Toda "complete responsibility"

---

[1]The indemnity clause of the subcontract provided, in relevant part: "All work covered by this Subcontract performed at the site of construction or in preparing or delivering material or equipment of any or all of them to the site, shall be at the sole risk of SUBCONTRACTOR. SUBCONTRACTOR shall, with respect to all work which is covered by or incidental to this Subcontract, defend, indemnify and hold TODA and OWNER (including their agents and employees) harmless from and against any or all of the following: [¶] (1) All liability, charges, penalties, fines, costs, fees, losses, damages, expenses, causes of action, claims, suits, settlements, awards and judgements (including reasonable attorney's fees) resulting from injury or death sustained by any person (including subcontractor's employees) or damage to property of any kind, which injury, death or damage arises out of, or is in any way connected with, or incidental to the performance of the work under this Subcontract . . . . [¶] It is expressly acknowledged and agreed that each of the foregoing indemnities is independent, that each shall be given effect, and that each shall apply to any acts, omissions, or negligent conduct, whether active or passive, on the part of OWNER, TODA or SUBCONTRACTOR . . . except that such indemnity and hold harmless agreements shall not be applicable to injury, death or damage to property arising from the sole negligence or willful misconduct of TODA, its agents, employees or subcontractors who are directly responsible to TODA, excluding SUBCONTRACTOR herein."

for any accident and required Toda to indemnify Otis for any loss due to an accident, except one that was "occasioned by [Otis's] acts or omissions."[2] Toda also agreed to provide a competent operator for the elevator and to pay Otis $60 a day for maintenance during the term of the agreement.

On May 19, 1988, Ron Anders, a Toda employee, was operating elevator No. 5 to transport workers and materials. Anders had made "at least" four successful trips in the elevator when plaintiff Jack Cameron entered on the first floor. Cameron asked for the 15th floor, and Anders pushed a button. Instead of going up, however, the elevator dropped half a floor and then stopped, injuring Cameron. Hiram Harlan, an elevator mechanic for Otis, inspected the elevator after the accident but was unable to determine the cause of the malfunction.

Cameron filed a lawsuit against Toda, Otis, and the West Santa Clara Group, alleging negligence and products liability. Both Toda and Otis filed cross-complaints, seeking indemnity on both contractual and equitable grounds. Cameron settled with Toda and Otis, who each paid one half of the $48,509 damages. Trial proceeded between Toda and Otis on the cross-complaints for indemnity.

At trial, Otis contended that the Temporary Acceptance agreement had established a "special indemnity relationship" which superseded the indemnity provision in the earlier subcontract. Accordingly, during Toda's temporary use of the elevator Toda was liable for "virtually any accident" except one caused by Otis's *active* negligence. Toda responded that the parties'

[2]The Temporary Acceptance provided, in pertinent part: "Supplementing the contract for the erection of the elevator(s) by you [Otis], we [Toda] agree to operate these elevators at our risk and expense, to provide a competent operator in the car, to use your service to oil, grease, clean the equipment and furnish necessary supplies upon the terms and conditions set forth on the reverse hereof and to pay you therefor at the rate of $60.00 per day during the term of this Temporary Acceptance. You shall continue to provide such service until the revocation in writing of this temporary acceptance as hereinafter provided for and shall bill us monthly for your charges. As we understand our use of the elevators will impose an expense on you for cleaning and reconditioning them on their return, we will pay you in addition to said per diem, an extra on a time and material basis at your prevailing rates for this expense. We further assume complete responsibility for any accident to persons or property, howsoever caused, and will indemnify and save you harmless against all loss, damage, claims, liability or expense arising therefrom, except such loss, damage, claims, liability or expense as may be occasioned by your acts or omissions. [¶] It is understood that the normal completion of the elevator(s) will be delayed for a period at least equal to time required to prepare for and terminate its use as a temporary elevator plus the length of term of the Temporary Acceptance. [¶] Other than for this delay, this Temporary Acceptance shall not affect the terms of any contract between us and may be revoked upon twenty-four hours' notice in writing. Any agreement between us to furnish supplies or care of the elevators is not to commence until the signing of the final acceptance."

dispute was governed by the subcontract, which required Otis to indemnify Toda unless the loss was caused solely by Toda's negligence or misconduct.

The trial court found that the Temporary Acceptance was applicable, and that its purpose was to "shift the indemnities," thereby making Toda responsible for loss during its use of elevator No. 5. Nevertheless, the court ruled, the Temporary Acceptance did not impose liability on Toda because the accident was caused by an "act or omission" of Otis, thus coming within the exception to Toda's duty to indemnify. The court rejected Otis's claim that active negligence had to be proven for the exception in the indemnity provision to apply; instead, the court stated, Otis had agreed to provide indemnity for "*anything* which happened by reason of the act or omission of Otis."[3]

Because the Temporary Acceptance was "ineffective" to require Toda to indemnify Otis, the court then turned to the original subcontract to determine whether Otis was obligated to indemnify Toda. The court answered this question in the affirmative, reasoning (in a footnote) that the doctrine of res ipsa loquitur mandated a finding of negligence by Otis under these circumstances. The court accordingly entered judgment awarding Toda $24,254.50, the amount Toda had paid Cameron in the settlement. The court also ordered Otis to pay Toda's attorney fees incurred in both the underlying action by Cameron and the litigation of the indemnity agreement.

## DISCUSSION

1., 2.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### 3. *Attorney Fees for the Indemnity Action*

The judgment awarded Toda reasonable attorney fees not only for the underlying action by Cameron, but also for the litigation of the indemnity agreement. The trial court subsequently granted Toda $26,659.54, the full amount claimed by Toda for defending the underlying action and for the indemnity litigation. In the appeal from the judgment and in the consolidated appeal from the ensuing order, Otis challenges the award of attorney fees for the indemnity action, contending these fees were not contemplated in the

---

[3]This statement is erroneous. The Temporary Acceptance did not impose on Otis a duty to indemnify Toda, but rather identified the circumstances in which Toda must indemnify Otis.
 *See footnote, *ante*, page 559.

parties' subcontract. Otis also asserts procedural obstacles to Toda's entitlement to fees for the indemnity action.[8] Toda not only maintains it is entitled to all fees awarded in the court below, but also requests attorneys fees for responding to the instant appeal.

 Otis's first point is well taken. Under the subcontract Otis promised to indemnify Toda for "all liability, charges, penalties, fines, costs, fees, losses, damages, expenses, causes of action, claims, suits, settlements, awards and judgements (including reasonable attorney's fees) resulting from injury or death sustained by any person. . . which injury, death or damage arises out of, or is in any way connected with, or incidental to the performance of the work under this Subcontract." It also assures indemnity for "[a]ll liability . . . fees . . . awards and judgements (including reasonable attorney's fees) however the same may be caused, incurred in connection with any of the terms or provisions of this Subcontract, performance bonds, . . . or liens, or stop notice claims . . . ." A third clause includes indemnity for those expenses (including attorney fees) which might arise from Toda's obligations to West Santa Clara Group. Each of the promises to indemnify Toda is made with respect to "all work covered by or incidental to this Subcontract."

We decline to adopt Toda's broad reading of the indemnity provision as including attorney fees in the litigation of an indemnity claim. The subcontract permits recovery of expenses, including attorney fees, incurred in defense of any third party claims arising out of Otis's performance of the work promised in the subcontract. The references to attorney fees in the subcontract describe the types of claims against which Otis is obligated to defend. Any resulting settlement or award paid by Toda, including attorney fees, must be indemnified by Otis. The provision does not specifically state, however, that Toda would be entitled to such fees in an action to enforce the *indemnity* provision of the subcontract. It is settled that attorney fees are not available to a prevailing party unless provided for by statute or contract. (Code Civ. Proc., § 1021; *Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 504 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763]; *Glynn* v. *Marquette* (1984) 152 Cal.App.3d 277, 280 [199 Cal.Rptr. 306]; *Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 127 [158 Cal.Rptr. 1, 599 P.2d 83].) Further, "[a] provision including attorney fees as an item of loss in an indemnity clause is not a provision for attorney fees in an action to enforce the contract." (*Myers Building Industries, Ltd.* v. *Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 971 [17 Cal.Rptr.2d 242].)

---

[8]Otis originally asserted procedural bar to the fee award for the underlying action as well, but in its reply brief it withdrew its procedural objection to attorney fees in that action, leaving only the challenges to the award in the indemnity action.

Toda argues, however, that Civil Code section 2778 has "extended the benefits of indemnity to claims for prosecution of an indemnity claim." Toda cites *De Witt* v. *Western Pacific R. Co.* (9th Cir. 1983) 719 F.2d 1448, where the court interpreted Civil Code section 2778, subdivision 3 to permit attorney fees incurred in the prosecution of an indemnification claim. (See also *Jones-Hamilton* v. *Beazer Materials & Services* (9th Cir. 1992) 973 F.2d 688, 696, fn. 4 [declining to reevaluate *De Witt*].) We disagree with the *De Witt* court's interpretation of this statute, however. Civil Code section 2778, subdivision 3, provides only that the costs of defending underlying claims are included among the expenses to be indemnified, unless the contract provides otherwise.[9]

The *De Witt* court cited two California cases in which costs were awarded the successful respondent on appeal from an indemnity judgment: *Schackman* v. *Universal Pictures Co.* (1967) 255 Cal.App.2d 857, 863 [63 Cal.Rptr. 607]; and *Nicholson-Brown, Inc.* v. *City of San Jose* (1976) 62 Cal.App.3d 526, 537 [133 Cal.Rptr. 159]. In neither of these cases, however, did the appellate court expressly consider the propriety of attorney fees for the prosecution of the indemnity agreement. Instead, their focus was solely on the procedural question of whether the trial court or the appellate court should determine the amount of attorney fees to be awarded for the indemnitee's successful defense of the judgment on appeal.

Other courts have departed from the course followed by *Schackman*, *Nicholson-Brown*, and *De Witt*. In *County of San Joaquin* v. *Stockton Swim Club* (1974) 42 Cal.App.3d 968, 973-974 [117 Cal.Rptr. 300], the Third District expressly disagreed with the *Schackman* result, preferring instead "to follow the general rule that the defendant in a contract suit is not liable for his opponent's attorney fees unless the contract expressly provides for it." (*Id.* at p. 974.) In *Pacific Tel. & Tel. Co.* v. *Chick* (1962) 202 Cal.App.2d 708, 719 [21 Cal.Rptr. 326], the First District, Division Two, also denied an indemnitee's request for attorney fees on appeal, noting that the indemnity agreement between the parties did not provide for an attorney fee award "in any action between the parties based upon the indemnity agreement." More recently, in *Hillman* v. *Leland E. Burns, Inc.* (1989) 209 Cal.App.3d 860, 869 [257 Cal.Rptr. 535], the First District, Division Two, acknowledged the split in authority. The *Hillman* court followed its decision in *Pacific Tel. & Tel. Co.* v. *Chick, supra,* reasoning: "An attorney fees provision would have been

---

[9]Civil Code section 2778, subdivision 3 provides: "In the interpretation of a contract of indemnity, the following rules are to be applied, unless a contrary intention appears: . . . 3. An indemnity against claims, or demands, or liability, expressly, or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good faith, and in the exercise of a reasonable discretion."

the proper subject for negotiation between the parties and possible inclusion in the indemnity agreement; but we decline to add, in the guise of interpretation, a provision which is not there." (*Hillman* v. *Leland E. Burns, Inc.*, *supra*, at p. 870; see also *Myers Building Industries, Ltd.* v. *Interface Technology, Inc.*, *supra*, 13 Cal.App.4th at p. 962 [contractual third party indemnity clause does not provide for attorney fees incurred in actions to enforce the contract].)

We believe this second line of cases represents the better-reasoned authority and adopt a similar result in this case. Because the indemnity agreement at issue here did not explicitly provide for attorney fees incurred in pursuing an indemnity claim against Otis, Toda was not entitled to them. The attorney fee award must therefore be amended to reflect only those fees incurred in the personal injury action.[10] In light of this result, it is unnecessary to address Otis's procedural objections to the award of these fees.

4. *Modification of Cost Award**

. . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The indemnity judgment in H010706 is affirmed. The order in H011117 is reversed, and the matter is remanded for redetermination of attorney fees and costs as directed above. Toda is entitled to costs on appeal in H010706, and Otis to costs in H011117.

Premo, P. J., and Wunderlich, J., concurred.

---

[10]Otis anticipated this outcome in the court below, requesting "segregation of attorney fees [to] facilitate the appellate process and . . . obviate a remand to the trial court to determine the fees incurred only in the personal-injury defense."

*See footnote, *ante*, page 559.